**In the Matter of Nicholas E. ARPAIA, III, Debtor.**

**Bankruptcy No. 2–91–03931.**

United States Bankruptcy Court, D. Connecticut.

Aug. 10, 1992.

Brian E. Lambeck, Law Offices of Edward D. Jacobs, New Haven, Conn., for debtor.

Leah Cohen Chatinover, F.D.I.C., East Hartford, Conn., for Receiver for Colony Sav. Bank, respondent.

Beth S. Becker, Green & Kleinman, P.C., Hartford, Conn., for Fleet Bank, N.A., respondent.

## MEMORANDUM OF DECISION ON MOTION TO DETERMINE VALUE OF SECURITY

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

#### *Issue*

At issue in this proceeding, commenced by a Fed.R.Bankr.P. 3012 motion,[1]

---

1. *Fed.R.Bankr.P. 3012. Valuation of Security.*
   The court may determine the value of a claim secured by a lien on property in which

the estate has an interest on motion of any party in interest and after a hearing on notice

is the standard for determining value of property where the purpose of the valuation is to decide the extent of a "strip down"[2] of secured creditors' liens encumbering a chapter 13 debtor's residence. The matter has been submitted upon the pleadings, a stipulation of facts and briefs.

## II.

### Background

Nicholas E. Arpaia, III, the debtor, filed a chapter 13 petition on November 27, 1991, following the holding of a mortgage-foreclosure public auction of his home located at 191 Cream Pot Road, Durham, Connecticut (the property). The highest price bid at the November 16, 1991 auction was $83,000.00. The auction, pursuant to a Connecticut court order, had been advertised in the local papers twice during the prior two weeks, and a "for sale" sign had been posted on the property. The parties have submitted appraisals disclosing the property value to be $155,000.00, were the court to utilize a comparable sales, non-forced liquidation, appraisal approach. The property is an eight-room, single-family home on 3.07 acres of land with a town assessment of $132,370.00.

The debtor's pleadings aver, that as of the bankruptcy petition date, the balances due on four claims secured by encumbrances on the debtor's property were as follows: (1) first mortgage held by Dime Savings Bank of Wallingford (Dime) (the foreclosing mortgagee) $80,578.09; (2) second mortgage held by Fleet Bank, N.A. (Fleet) $60,000.00; (3) third mortgage held by Colony Savings Bank (Colony) $40,000.00; (4) attachment lien held by Connecticut National Bank (CNB) $5,100.00.[3]

The debtor's Third Amended Chapter 13 Plan (the plan) proposes that the debtor shall retain his property and decelerate the defaulted Dime mortgage by paying arrearages of $11,271.00 through the plan. The plan further provides that $2,421.91 of the Fleet claim will be treated as a secured claim payable over the plan's five-year term. The balance of the Fleet claim ($57,578.09) and the entire Colony and CNB claims will be treated as unsecured claims, to be paid a dividend of approximately one percent. The debtor proposes to make 60 monthly payments of $450.00 each to the chapter 13 trustee to fund the plan.

In order to make the plan feasible, the debtor contends the court should determine the value of his property to be $83,000.00,[4] established by the bidding at the mortgage-foreclosure auction. Fleet and Colony[5] argue that the court should set the fair market value of the property at $155,000.00, its appraisal value in a non-forced sale context. At the auction sale, a total of six bids from three bidders were received—Dime making the opening bid of $72,500.00 and Colony making the final bid of $83,000.00.

## III.

### Discussion

■ Bankruptcy Code § 506(a) provides the framework for the resolution of the issue here presented.

*§ 506. Determination of Secured Status.*

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is

to the holder of a secured claim and any other entity as the court may direct.

2. "Strip down" is the reduction of "a creditor's lien on real property to the value of the collateral, as judicially determined, when that value is less than the amount of the claim secured by the lien." *Dewsnup v. Timm,* — U.S. —, —, 112 S.Ct. 773, 775, 116 L.Ed.2d 903 (1992).

3. The parties have assumed that the petition date is the relevant date for all determinations.

4.

| | |
|---|---|
| Property Value | $83,000.00 |
| Dime Mortgage | − $80,578.09 |
| Equity Available For Fleet | $ 2,421.91 |
| Equity Available For Colony | –0– |
| Equity Available For CNB | –0– |

The debtor concedes in his brief that if the court determines the value of the property to be other than $83,000.00, the plan is not feasible.

5. On February 28, 1992, the Connecticut Superior Court declared Colony insolvent and appointed the Federal Deposit Insurance Corporation as its receiver.

a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The § 506(a) legislative history further explicates the valuation process:

> Subsection (a) of this section separates an undersecured creditor's claim into two parts—he has a secured claim to the extent of the value of his collateral; he has an undersecured claim for the balance of his claim. "Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), *reprinted in*, 1978 U.S.C.C.A.N. 5787, 6312.

It is readily apparent from the foregoing that Congress intended that the purpose and the circumstances of each proceeding be the prime determinants on the standard of valuation adopted by the court. The purpose of the debtor seeking a determination of value in this proceeding is to strip down the liens encumbering his property and thereafter to retain title and remain in possession. His plan essentially calls for the payment only of claims to the extent they are secured by the property.

The Second Circuit, in *In re Bellamy*, 962 F.2d 176 (2d Cir.1992), has held, notwithstanding the Supreme Court's ruling in *Dewsnup v. Timm*, — U.S. —, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) that a chapter 7 debtor may not void the unsecured portion of a secured creditor's lien, that in a chapter 13 reorganization the debtor may apply strip down to encumbrances on the debtor's residence. The parties in *Bellamy* having stipulated to the value of the debtor's property, *Bellamy* contains no discussion on the standard of valuation of the involved property. Neither the parties nor the court have located case authority directly on point on the issue of the standard of valuation in a chapter 13 strip down involving a residence. There is, however, analogous authority which supports the use of a non-forced sale standard of valuation under the stipulated-to circumstances in this case.

A leading treatise, 3 *Collier on Bankruptcy* ¶ 506.04 at 506–31 to –32 (15th Ed. 1992), during its discussion of § 506(a) states that "[i]f retention and use by the debtor of the collateral is proposed, there is generally no reason to assume for purposes of valuation that the collateral will be disposed of on a 'forced sale' basis. Although circumstances may be imagined under which a forced sale would be a commercially reasonable disposition, such circumstances would be highly unusual with respect to property which the debtor desires to retain and use." *Crouch v. Pioneer Federal Savings Bank (In re Crouch)*, 80 B.R. 364 (Bankr.W.D.Va.1987) involved chapter 7 debtors' use of § 506(d) to reduce the amount of lien indebtedness on the debtors' residence (obviously prior to the *Dewsnup* ruling). The debtors argued for the use of a "liquidation value" while the lienholder advocated use of "market value." The court held that since the debtors' purpose was "to retain their property postpetition with liens on it of an amount no greater than the value of the Property," the "market value of the property is the proper method of valuation." *Id.* at 366–367. *See also Yoder v. United States of America (In re Yoder)*, 32 B.R. 777, 779 (Bankr.W.D.Pa.1983), *aff'd & rev'd in part on other ground*, 48 B.R. 744 (W.D.Pa. 1984) (same); *Savloff v. Continental Bank (In re Savloff)*, 4 B.R. 285, 287 (Bankr. E.D.Pa.1980) (same). *Cf. In re Frost*, 47 B.R. 961, 964 (D.Kan.1985) (in chapter 13 case where debtors retaining business assets subject to tax lien to be used in continuation of the business, "bankruptcy court

erred when it applied 'forced-sale' value to the debtors' [assets]").

The debtor relies upon two unreported Connecticut bankruptcy court rulings—one from this court and one from the Bridgeport seat of court—to support use of the forced-sale valuation of $83,000.00. This court's ruling in *In re Meltzer,* Case No. 2–84–00341 (Bankr.D.Conn. September 17, 1984) is completely inapposite as it involved a relief from stay proceeding in a chapter 11 case, where the value adopted by the court was based upon the prepetition, arms-length sales price of the involved realty. The other ruling is an oral opinion in *In re Carmon,* Case No. 90–51722 (Bankr. D.Conn. June 5, 1991), where the court in a chapter 13 case apparently set the value of realty during a § 506(a) hearing at the high bid made during a state-court foreclosure auction. The debtor attached to his brief nothing more than the transcript of the Bridgeport court's oral bench ruling made at the conclusion of a trial. This manner of submitting rulings for precedential value is completely inappropriate and unhelpful.

The debtor's remaining argument is that this court should consider as "the proposed disposition of the property" the auction sale rather than the debtor's stated intention in his plan to retain and occupy the property. *Debtor's Brief* at 5. The answer to this contention was best expressed by the court in *In re Crockett,* 3 B.R. 365, 367 (Bankr.N.D.Ill.1980), concerning a valuation hearing on a motor vehicle: "Under a Chapter 13 plan the secured claim would be valued with due regard to the value of the property to the estate. '[T]he proposed disposition or use of such property' (Sec. 506(a)) in the instant case is for the debtors' retention and use. Therefore, the debtors cannot eat with the hounds and run with the hares. Seeking retention of the property, they cannot insist on liquidation values to be paid to the creditor...."

## IV.

### *Conclusion*

In the state-court foreclosure action, Colony attempted to protect its claim by becoming the high bidder at $83,000.00 (there being no reason to bid higher), thereby expecting to receive title to the property. The debtor, through its chapter 13 case, proposes both to deny transfer of the property to Colony and also to deny payment of Colony's claim, except possibly for a one percent dividend as an unsecured claim. This proceeding highlights why the forced-sale valuation will rarely be an appropriate method of valuation in a chapter 13 lien strip-down hearing.

The court concludes that inasmuch as the debtor's chapter 13 plan proposes that the debtor retain his residential property and strip down the liens encumbering the property, the fair market value as established under non-forced sale circumstances is the appropriate standard of valuation. Based on the record made, the court, accordingly, determines the value of the debtor's residential property to be $155,000.00. In light of the concessions made in the debtor's brief, there is no need in this ruling to further refine the secured and unsecured portions of the claims. It is

SO ORDERED.