In re Jerry **ARNETTE** and Wendy Arnette, Debtors.

Jerry **ARNETTE** and Wendy Arnette, Movants,

v.

**GENERAL MOTORS ACCEPTANCE CORP., Respondent.**

**Bankruptcy No. 92–50693.**

United States Bankruptcy Court, D. Connecticut.

July 26, 1993.

Mark Carron, Westport, CT, for movant.

Michael Brodinsky, North Haven, CT, for respondent.

**MEMORANDUM AND ORDER ON MOTION FOR DETERMINATION OF SECURED STATUS UNDER 11 U.S.C. § 506(a)**

ALAN H.W. SHIFF, Bankruptcy Judge.

On July 6, 1992, the chapter 13 debtors filed the instant motion under 11 U.S.C.A. § 506(a) (West 1993) to determine the value of their 1988 Chevrolet S–10 Blazer which is collateral for a claim held by General

Motors Acceptance Corporation ("GMAC"). *See* Rule 3012 Fed.R.Bankr.P. For the reasons that follow, I conclude that the vehicle must be assessed at its fair market value, i.e. the price the debtors could get for it in a free and open market, and that GMAC's allowed secured claim is fixed at that amount.

## BACKGROUND

On March 2, 1992, the debtors commenced a case under chapter 7 of the Bankruptcy Code which they converted to chapter 13 on July 6, 1992. At the commencement of this case they owed GMAC $9,729.13, which was secured by a first priority security interest in their 1988 Chevrolet S–10 Blazer. The debtors propose to retain that vehicle and pay the allowed amount of GMAC's secured claim through a three year chapter 13 plan.[1]

## DISCUSSION

### 1.

Code § 506(a) provides in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

■ Most courts have determined the value of a vehicle to be retained by a chapter 13 debtor from the perspective of what the holder of a claim secured by that vehicle could get by selling it. *See e.g., In re Mitchell*, 954 F.2d 557, 560 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992) (value set at the National Automobile Dealers' Association ("NADA") guidebook wholesale or trade-in value because that is what the creditor could obtain for it); *In re Klein*, 10 B.R. 657, 660 (Bankr.E.D.N.Y.1981) (value set at the price the creditor could obtain through a commercially reasonable sale of the vehicle). However, "[s]ubsection (a) of § 506 provides that a claim is secured only to the extent of the value of the property on which the lien is fixed." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1988) (dictum). The phrase "value of such creditor's interest" has been defined as "the value of the collateral." *United Savings Ass'n v. Timbers of Inwood Forest Associates*, 484 U.S. 365, 372, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1987) (dictum). Therefore the term "collateral," as used in *Timbers*, means the property which serves as security for the creditor's loan. "It would run contrary to *Timbers* to hold that the value of an undersecured creditor's lien interest is some amount less than the full value of the collateral." *In re Green*, 151 B.R. 501, 505–6 (Bankr.D.Minn.1993).

The parties adhere to this reasoning by arguing that the vehicle should be valued from the perspective of what the *debtors* could obtain by selling it. The debtors assert that they could obtain only the NADA wholesale value because the vehicle would have to be reconditioned and under a warranty to attain the NADA retail value. GMAC, on the other hand, argues that no discount from the NADA retail value is appropriate because of the excellent condition of this vehicle and because a dealer would get the NADA retail value plus the value of a warranty on resale of the vehicle.

In *Matter of Arpaia*, 143 B.R. 587, 588 (Bankr.D.Conn.1992), the debtor argued that the value of his residence should be set at $83,000, which was the high bid obtained at a prepetition foreclosure sale. Two junior secured creditors argued that the value of the residence should be set at its fair market value which was established as $155,000. *Id.* The court reasoned that, in valuing property pursuant to § 506(a), the value of the property should be deter-

---

1. *See* the Arnettes' *Chapter 13 First Amended Plan*, December 30, 1992, ¶ 2.

mined by the relevant facts of that case. *Id.* at 589. That included the debtor's proposal to void liens encumbering his residence to the extent they exceeded its value, pay the allowed amount of adjusted secured claims over the period of his plan, and retain possession.[2] *Id.* Under those circumstances, the value of the property was the price obtainable in a free and open market, i.e. its "fair market value as established under non-forced sale circumstances." *Id.* at 590. As the court in *Matter of Crockett,* 3 B.R. 365, 367 (Bankr. N.D.Ill.1980) artfully noted, where debtors propose to retain property pursuant to a chapter 13 plan they "cannot eat with the hounds and run with the hares. Seeking retention of the property, they cannot insist on liquidation values to be paid to the creditor." *See In re Johnson,* 145 B.R. 108, 115–16 (Bankr.S.D.Ga.1992) (property that is to be retained pursuant to a chapter 13 plan is not to be valued assuming that the secured creditor will dispose of it); *cf., In re Bellamy,* 122 B.R. 856, 862 (Bankr. D.Conn.) (disposal costs a secured creditor would have to pay if allowed to foreclose on property are not deducted from the fair market value of the property where the debtor plans to retain the property), *aff'd,* 132 B.R. 810 (D.Conn.1991), *aff'd,* 962 F.2d 176 (2d Cir.1992), *overruled on other grounds by Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

■ I adopt the *Arpaia* analysis and conclude that in a § 506(a) determination, an asset to be retained by a debtor under a chapter 13 plan should be valued at the price the debtor could get for it in a free and open market, i.e. its fair market value. I further conclude that this determination should be made as of the time of the valuation hearing because, although under 11 U.S.C.A. § 1325(a)(5)(B)(ii) (West 1993) a secured creditor must receive the value of the collateral "as of the effective date of the plan,"

**2.** *Matter of Arpaia, supra,* 143 B.R. 587, was decided before *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), which eliminated the use of § 506(a)

[f]or the purposes of cram down valuation [pursuant to § 1325(a)(5)(B)(ii)], the Court will determine the value of the collateral as of the date of the valuation hearing, since, as a practical matter, confirmation will almost always follow within in a brief time after this hearing.

*In re Klein, supra,* 10 B.R. at 661.

**2.**

■ The parties offered expert testimony from appraisers. Both experts based their opinions on the NADA guidebook to the value of used motor vehicles. The debtors' expert testified that the vehicle was in average condition as of his April 14, 1993 inspection, although he stated that it had no observable defects. His opinion was based on a ten minute exterior inspection; he did not enter the vehicle, and he did not test its mechanical condition. He testified that the present trade-in or wholesale value of the vehicle was $6,550; that amount is all that the debtors could obtain by selling it; the present NADA retail value of this vehicle is $8,950, but a retail value is obtainable only by dealers after reconditioning a vehicle and providing a warranty to the consumer.

GMAC's expert based his opinion on a February 10, 1993, inspection of the interior and exterior of the vehicle and a brief test of its engine. He testified that the vehicle's interior, exterior, and mechanical condition were in mint or showroom condition and that it had an exceptionally high retail value which, according to the February 1993 NADA guidebook, was $9,175. He further testified that the debtors could obtain that amount by selling it to an automobile dealer or directly to a consumer because the vehicle needed no reconditioning. A dealer would provide a warranty and sell it for $9,500 to $10,000. I find that GMAC's expert was more credible and his analysis more persuasive. Applying that assessment to the April NADA retail value, I conclude that the fair market value of the vehicle is $8,950.

by chapter 13 debtors to reduce a secured claim to the value of their principal residence where it is that claimant's sole collateral. *See* 11 U.S.C.A. § 1322(b)(2) (West 1993).

## ORDER

The fair market value of the debtors' 1988 Chevrolet S–10 Blazer is $8,950; General Motors Acceptance Corporation has an allowed secured claim in that amount; its lien is void and its claim unsecured to the extent that it exceeds that amount; and IT IS SO ORDERED.