In The Matter of **REAL ESTATE WEST VENTURES, L.P.,** Debtor.

**EMPIRE FINANCIAL SERVICES, INC., Plaintiff,**

v.

**Ira D. GINGOLD,** Trustee of Real Estate West Ventures, L.P., Defendant.

Bankruptcy No. N91–01287–WHD.
Adv. No. 92–1064N.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Sept. 24, 1993.

Robert J. Mottern, Thomas E. Austin, Jr., Norton & D'Agostino, Atlanta, GA, for plaintiff.

Ira D. Gingold, Trustee/defendant, Atlanta, GA.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on cross Motions for Summary Judgment, filed in this adversary proceeding by the plaintiff Empire Financial Services, Inc., (hereinafter "Empire") and the defendant Ira D. Gingold, Trustee of Real Estate West Ventures, L.P. (hereinafter "Trustee"), and the Motion to Strike the Trustee's affidavits, filed by Empire. The issues raised in these Motions pertain to the rights of these parties to certain rents and security deposits currently held by the Trustee, and the matters involved are core proceedings over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B). The Court will base its decision upon the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Real Estate West Ventures, L.P., (hereinafter "Debtor") was the owner of two apartment complexes, one located in Augusta, Georgia, and the other in Milledgeville, Georgia. To finance the development and construction of these complexes, the Debtor entered into various loan transactions with Empire, which obtained six promissory notes secured by a first priority security interest in

the two apartment complex properties. The Debtor's original indebtedness was in the principal amount of $2,397,000 for loans made in connection with the Milledgeville development, and $2,497,000 for loans made in connection with the Augusta development. As part of these transactions, the Debtor executed a series of substantially similar security deeds covering the properties, and each deed contained a clause granting Empire a first priority security interest in the fee and leasehold interest as well as all rents derived therefrom. Specifically, this clause provides as follows:

> There is also hereby conveyed [by Debtor]: ... all income, rents, issues, profits and revenues of the property from time to time accruing (including without limitation all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by [Debtor] or in a trust account, and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of [Debtor], in and to the same; reserving only the right to [Debtor] to collect the same so long as [Debtor] is not in default hereunder.

Dyer Aff., Exhibit B (Dec. 7, 1992). In addition, the parties executed an Assignment of Leases and Rents containing the following similar language:

> [Debtor] does hereby grant, transfer and assign to [Empire], its successors, successors-in-title and assigns, all of [Debtor's] right, title and interest in, to and under all [leases and occupancy agreements involving apartments and other residential units located on the two properties], including any and all extensions, renewals and modifications thereof and guaranties of the performance or obligations of any tenants and lessees thereunder ... together with all of [Debtor's] right, title and interest in and to

all rents, issues and profits from the Leases and from the Premises.

Dyer Aff., Exhibit C (Dec. 7, 1992).

On November 1, 1990, the Debtor defaulted on the loan when it failed to make the monthly payment of principal and interest due at that time. As a result, Empire notified Debtor by letter dated November 28, 1990, of its intent to invoke its rights under the Assignment of Leases and Rents with respect to the properties.[1] Later, meetings between the parties took place to discuss the legal effect of that letter as well as the general conditions and operations of the subject properties. Afterwards, Empire accelerated the loan and advertised foreclosure.

In an effort to stay the pending foreclosure, the Debtor filed for protection on May 7, 1991, in this Court under Chapter 11 of the Bankruptcy Code. Less than six months later, however, the Court converted this case to a proceeding under Chapter 7 on October 29, 1991, and appointed Gingold as Trustee. Upon his appointment, the Trustee closed the operating and security deposit accounts of the Debtor, transferring the funds into an account in his own name. According to Empire's Motion and accompanying affidavits, these funds include $172,240.18 of rents and $58,769.25 of security deposits.

Soon after conversion of this case, Empire gained relief from the automatic stay by Order dated November 12, 1991, and foreclosed on the properties in Augusta and Milledgeville on January 7, 1992. At the foreclosure sale, Empire bid in an amount of $2,608,853.27 on the Milledgeville property, and $2,660,317.61 on the Augusta property. As a result, Empire alleges it has a deficiency claim in an amount totalling $788,597.78.[2] In calculating the total amount of its claim in order to determine the deficiency, Empire includes principal, accrued interest, statutory attorney's fees, and costs.

Empire commenced this adversary proceeding on August 28, 1992, and filed this

---

1. Actually, this letter was sent to Sherman & Hemstreet, Inc., the agent of the Debtor managing the Augusta and Milledgeville properties. *See* Dozier Aff. at ¶¶ 3–7 (Dec. 10, 1992). A copy of this letter is attached to the affidavit of William L. Dozier as Exhibit A.

2. According to its Statement of Material facts, Empire alleges specifically that it has a deficiency claim as to the August property in the amount of $398,419.79, and a claim as to the Milledgeville property in the amount of $390,177.99. *See* ¶¶ 16–17.

subsequent Motion for Summary Judgment. The two arguments asserted by this Motion are that Empire is entitled to the rents held by the Trustee and that the security deposits are not property of the estate. The basis of Empire's claim to the rent money is that it has a perfected lien and these funds will satisfy part of its deficiency claim. In opposition, the Trustee argues that by virtue of the amount Empire bid in at the foreclosure on the properties, Empire's debt has been fully satisfied, so it is not entitled to receive the money from the rents. As for the security deposits, Empire notes that after foreclosure it has had to reimburse the tenants for their deposits, and will have to continue doing so. Since security deposits are not lawfully property of the estate, Empire argues that the Trustee should be required to turn them over as reimbursement for Empire's previous payments of the deposits and to hold the amount for future payments. The Trustee disputes this claim.

In opposing Empire's Motion for Summary Judgment, the Trustee has filed his own Motion. The Court notes, however, that the Brief filed by the Trustee in support of his Motion is exactly the same as the one he filed in opposition to Empire's Motion. As such, it is not entirely clear on what issues the Trustee is asking for judgment.[3] Therefore, the Court will assume that the Trustee is asking for judgment in his favor on the exact same issues that Empire is asking for judgment.

Finally, Empire has moved this Court to strike the affidavits submitted by the Trustee in opposition to Empire's Motion and in support of his own Motion. The basis for Empire's Motion is that the Trustee does not have personal knowledge of the events in question to make him competent to testify. The trustee opposes this Motion, as well.

In view of the reasoning set forth below, the Court will deny the Motion to Strike, grant in part Empire's Motion for Summary Judgment, and deny the Trustee's Motion for Summary Judgment.

---

**3.** The Court suggests that in future Motions, the Trustee take the effort to identify exactly what issues to which he is referring instead of simply resubmitting a previous filing under another name.

## CONCLUSIONS OF LAW

### I. Motion to Strike

█ The first issue the Court will address is Empire's Motion to Strike the Trustee's affidavits which the Trustee submitted in opposition to Empire's Motion for Summary Judgment and in support of his own Motion. These affidavits are virtually identical. The content of affidavits when used in a motion for summary judgment is governed by Fed. R.Civ.P. 56(e), which provides in part as follows:

> Supporting and opposing affidavits shall be made on *personal knowledge*, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

(emphasis added). It is the contention of Empire that the Trustee does not have any personal knowledge of the events in question in this proceeding since they occurred before his appointment. Without personal knowledge, the Trustee would be incompetent to testify, *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir.1988), and his affidavits would be struck as a whole. The Trustee's affidavits, however, incorporate certain exhibits regarding the financial affairs of the Augusta and Milledgeville properties, and the Court finds that the Trustee's familiarity with such information constitutes the necessary personal knowledge to make these affidavits. In addition, the Court finds this information highly pertinent to the issues raised by these Motions.

█ Therefore, the Trustee's affidavits as a whole are not improper. Nevertheless, Empire objects to certain paragraphs and allegations as being irrelevant, immaterial, and simply constituting a legal argument instead of testimony as to facts in issue. A review of the affidavits reveals that several portions of them are improper, and Empire's objections are well taken.[4] Instead of strik-

---

**4.** For example, the Court notes that for the most part, paragraphs 3, 5, and 6 are blatant legal arguments devoid of the type of factual testimony usually found in an affidavit.

ing the whole affidavit, however, the Court will simply disregard the objectionable portions when considering this evidence while addressing below the main issues raised in the Motions for Summary Judgment.

## II. Motions for Summary Judgment

In accordance with Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, this Court will grant a motion for summary judgment only when there is no material issue of fact to be tried and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant has the burden to establish that no such factual issue exists, *Id.* at 324, 106 S.Ct. at 2553, and the Court will read the opposing party's pleadings liberally. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is a drastic remedy, to be granted when there is no room for controversy. *United States v. Earhart (In re Earhart),* 68 B.R. 14, 15 (Bankr.N.D.Iowa 1986); *Sell v. Heath (In re Heath),* 60 B.R. 338, 339 (Bankr.D.Colo.1986).

The two main issues raised on these Motions are whether Empire has a right to the rents held by the Trustee and whether the security deposits held by the Trustee are property of the estate. The Court will address each issue separately. Furthermore, the resolution of these issues is dependent on state law. In *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court held that

> [p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." The justifications for application of state law are not limited

to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.

440 U.S. at 55, 99 S.Ct. at 918 (citation omitted). Since Empire's claimed interest is based upon a security deed and rent assignment on property located within this state, Georgia law applies.

### A. Assignment of Rents

The first matter raised on these Motions pertains to what rights, if any, Empire maintains in the certain rents generated from the Augusta and Milledgeville properties which the Trustee possesses. The principal argument of Empire is that it is automatically entitled to receive the rents upon the default of the Debtor based upon the unconditional language of the security deed and assignment. In the alternative, Empire asserts that it nevertheless took the appropriate steps necessary to perfect its lien so as to entitle it to receive the rents.

The recent case of *In re Polo Club Apartments Assocs. Ltd. Partnership,* 150 B.R. 840 (Bankr.N.D.Ga.1993) (Cotton, B.J.), addressed the issue of the rights of a creditor that claims it is entitled to receive rents under a security deed and assignment due to the default of the debtor. In his opinion, Judge Cotton provides an excellent and thorough overview of the law of Georgia, reaching the following conclusion:

> [Georgia] cases have established the controlling rule that a security deed grantee out of possession is not presently entitled to receive rents merely upon the occurrence or existence of a default. The grantor being in possession and receiving rents may not be disturbed in his right to the rents by the security deed grantee until he takes possession or takes other appropriate action to subject the land and rents to the debt. This means that *affirmative action or positive steps must be taken by the security deed grantee* before there is a present right to receive rents under such written rent assignment.

150 B.R. at 851 (emphasis added) (relying on *Penn Mutual Life Ins. Co. v. Larsen,* 178 Ga. 255, 173 S.E. 125 (1934), and its subsequent

line of authority). In other words, Georgia law focuses on the possession of the property to determine the right to receive the rents therefrom. The debtor, being in possession of the property, maintains the right to receive the rents until the creditor takes some act to terminate that right pursuant to the security deed and assignment. It is necessary for the creditor to take such action despite any unconditional language in the security agreement. *Id.* at 850. The conclusion of *Polo Club* is consistent with other cases addressing similar issues. *See In re Keller*, 150 B.R. 835 (Bankr.N.D.Ga.1993) (Kahn, C.J.) (specifically agreeing with reasoning of *Polo Club* ); *Acacia Mut. Life Ins. Co. v. Perimeter Park Inv. Assocs., Ltd. (In re Perimeter Park Inv. Assocs., Ltd.)*, 1 B.R. 473 (Bankr.N.D.Ga.1979) (Norton, B.J.); *Ivor B. Clark Co. v. Hogan*, 296 F.Supp. 398 (S.D.N.Y.1968) (applying Georgia law).

The Court finds the reasoning of *Polo Club* and the above cited cases to be persuasive. Accordingly, so long as the Debtor remained in possession of the Augusta and Milledgeville properties, it was entitled to collect and freely use the rents. Even after its default, the Debtor was entitled to collect and use the rents until Empire took some affirmative action to invoke its rights. The fact that Empire had a perfected interest in these rents is not dispositive of the Motions before the Court, because its rights

> were inchoate rights which could be made choate upon 1) default by the Debtor under the deeds to secure debt *and* 2) the taking of some affirmative action to displace the Debtor (or his bankruptcy trustee) from collecting the Rents.

*Keller*, 150 B.R. at 839 (footnote omitted) (emphasis in original). Since neither party disputes the fact that default occurred on November 1, 1990, the remaining question is whether Empire has taken the necessary affirmative steps and actions to displace the Debtor from collecting the rents.

■ In the Motions before the Court, Empire has asserted certain facts which, it claims, show it has taken the necessary affirmative acts to entitle it to the rents from the properties after the Debtor's default. Specifically, Empire refers to its letter of November 28, 1990. This letter was sent to Sherman & Hemstreet, Inc., the managing agent for the properties, and it provides in pertinent part:

> [W]e do not want any more disbursements made to the owners on either the Milledgeville or Augusta projects owned by [the Debtor]. Our rent and lease assignments give us the authority to *control* the utilization of the rental income.

Dozier Aff., Exhibit A (Dec. 10, 1992) (emphasis added). Upon receipt of this letter, Sherman & Hemstreet stopped making distributions to the Debtor. *See* Dozier Aff. at ¶ 7 (Dec. 10, 1992). Therefore, it appears that by its letter, Empire took control of the rents and displaced the Debtor from collecting them.

The November letter was followed by a meeting in February, 1991, in which Empire, the Debtor, and Sherman & Hemstreet met to discuss the significance of the letter. It is the position of Empire that at the meeting the parties agreed that Empire was in control of the properties. In support of this factual allegation, Empire presents as evidence the affidavits of William L. Dozier, Senior Vice President of Sherman & Hemstreet, and J. David Dyer, President of Empire, both of whom were present at the meeting.[5] The Trustee disputes this fact, yet presents no evidence of his own to contradict it. In fact, he does not specifically deny that such an agreement was reached, but only claims that it "requires further proof at trial" to establish this point. Trustee's Response

---

5. Specifically, these affidavits state as follows: Empire's position at the [February 27, 1991,] meeting was that, by virtue of the November 28, 1990 letter, it had taken control of the Properties pursuant to an assignment of leases and rents which it had recorded in the real estate records with respect to both Properties. The result of the meeting was that *all parties in attendance agreed that Empire was in control of the Properties and their operations*, that Sherman & Hemstreet was now Empire's agent for managing the Properties, and that Sherman & Hemstreet was to take orders only from Empire concerning the operation of the Properties.

Dozier Aff. at ¶ 8 (Dec. 10, 1992) (emphasis added); *see also* Dyer Aff. at ¶ 10 (Dec. 7, 1992).

at 5 (Jan. 26, 1993). It is a settled rule of law that once a motion for summary judgment is supported by a prima facie showing that the moving party is entitled to judgment, the party opposing the motion must present evidence showing there is a material issue of fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The Trustee does not have the opportunity to wait for trial to discuss this issue further. It was incumbent upon him to present his own evidence to contradict the evidence presented by Empire.[6] Since this was not done, the Court finds that the parties agreed at the February, 1991, meeting that Empire was in control of the properties pursuant to its letter of November 28, 1990.

In view of these uncontradicted facts, the Court finds that Empire has taken affirmative actions and positive steps to displace the Debtor from control over collecting the rents, starting with its letter dated November 28, 1990.[7] In addition, the Court notes that Empire took affirmative actions and positive steps to displace the Debtor from any control over the Augusta and Milledgeville properties by beginning foreclosure proceedings after the February, 1991, meeting.[8] Therefore, the Court concludes that Empire's rights to the rents became choate upon its November letter.[9]

**6.** The evidence before the Court states that Mitt Conerly and Dean Childress, principals of the Debtor, were present at the meeting. *See* Dyer Aff. at ¶ 10 (Dec. 7, 1992). They would have been competent to offer testimony in the form of an affidavit to contradict the testimony of Dozier and Dyer. Since the Trustee has not utilized them to present such evidence, no material issue of fact exists.

**7.** The Trustee has argued that Empire was required to file a § 546(b) post petition perfection notice in order to claim the rents as cash collateral. By finding that Empire perfected its interest *prior* to the petition, the Court need not consider this argument.

**8.** The Court notes that evidence exists showing Empire had already entered the property to take control before commencing foreclosure proceedings. Specifically, Exhibit A to the Trustee's Brief of January 26, 1993, is a letter from Empire to Sherman & Hemstreet, dated February 22, 1991, discussing an inspection made by Empire as to the condition of both properties.

**9.** The Court notes the Trustee's argument that Empire could only take control of the rents by

The finding that Empire has a right to these rents is material only to the extent that the foreclosure and sale of the Milledgeville and Augusta properties failed to satisfy Empire's claim. At the time of foreclosure, Empire bid in an amount of $5,269,224.88 for the properties, leaving it with an alleged deficiency claim of $788,597.78, an amount more than enough to entitle it to the rents in question. The Trustee, however, asserts there is no deficiency because this bid in amount is "equal to what [Empire] thought the properties' value was and in effect paid in full the debt of [Empire]." *See* Trustee's Brief at 21 (Jan. 26, 1993). The Court disagrees with the Trustee's position since the price received from a forced sale is almost never a good indication of the asset's true value. As one court has stated:

> [T]he value of collateral security should be determined by the amount which would be obtained from the most commercially reasonable disposition practicable under the circumstances. . . . [O]nly in the rarest of circumstances, where other methods of disposition are precluded, should the property be valued at what it would bring at forced sale.

*Savloff v. Continental Bank (In re Savloff)*, 4 B.R. 285, 287 (Bankr.E.D.Pa.1980) (agreeing

giving notice to each tenant of its intent to seize the rents. To support his position, he points to § 1.02(e) of the Assignment of Leases and Rents, which provides as follows:

> Borrower shall authorize and direct, and does hereby authorize and direct each and every present and future Tenant of the whole or any part of the Premises to pay all the rental to Lender upon receipt of written demand from Lender to so pay the same.

Dyer Aff., Exhibit C (Dec. 7, 1992). The Court finds that this section did not require Empire to provide the tenants with notice prior to asserting an interest in the rents. Section 1.02(e) merely provides that upon receiving a written demand from Empire, the tenants would be required to make their rental payments to Empire. Nothing in this language suggests that Empire is required to make a written demand of each of the tenants as a prerequisite to asserting an interest in the rents. Empire merely elected to forego this method of rent collection and contacted Sherman & Hemstreet directly to assert its right to control the rents.

with rationale of *Lane Indus., Inc. v. Abramson (In re Pennyrich, Inc. of Dallas)*, 473 F.2d 417 (5th Cir.1973)); *see also Arnette v. General Motors Acceptance Corp. (In re Arnette)*, 156 B.R. 366, 368 (Bankr.D.Conn. 1993) (valuation of collateral pursuant to 11 U.S.C. 506(a) should be fair market value); *In re Arpaia*, 143 B.R. 587, 588–90 (Bankr. D.Conn.1992) (same). Therefore, the fair market value is the proper figure to use in determining if a deficiency exists in this case. Nevertheless, while it appears that a deficiency does exist, the jumbled evidence of the properties' valuation presented on this Motion make it impossible for the Court to rule on this particular issue at this time.[10]

■ The Trustee also argues that *no* deficiency claim can exist since Empire failed to confirm a deficiency as required under O.C.G.A. § 44–14–161,[11] but the Court finds this contention to be without merit, too. Section 44–14–161 provides that if a creditor fails to obtain judicial confirmation of a foreclosure sale that the foreclosure purchase price of the property was the reasonable equivalent of the fair market value, the creditor may not pursue a deficiency claim against the debtor. The Trustee contends that because Empire failed to obtain judicial confirmation of its foreclosure it may not pursue a deficiency claim and may not recover the rents. However, a creditor need confirm a foreclosure only in order to realize its claim from any property to which its security interest does *not* extend. *In re Johnson, Wilson & Dillon*, 123 B.R. 439, 441 (Bankr.N.D.Ga. 1990) (Murphy, B.J.) (citing *Calvert Fire Ins. Co. v. Environs Dev. Corp.*, 601 F.2d 851 (5th Cir.1979) and *Marler v. Rockmart Bank*, 146 Ga.App. 548, 246 S.E.2d 731 (1978)). As previously noted, the Security Deeds executed by the Debtor do convey to Empire a security interest in the rents. Accordingly, Empire was not required to confirm a deficiency in order to realize its claim for the rents.

## B. Security Deposits

The second issue raised in these Motions is whether Empire is entitled to recover certain amounts of money as security deposits allegedly in the Trustee's possession. Empire contends that $58,769.25 in accounts seized by the Trustee did not become property of the estate since they were security deposits, and it contends further that as Empire has already refunded deposits to certain tenants, and will have to continue to do so in the future, the Trustee should relinquish possession of these funds. In the alternative, Empire seeks reimbursement for the Security Deposits that it has repaid to certain tenants as an administrative expense.

■ When a landlord in Georgia receives funds from a tenant constituting a security deposit, he must give it special treatment. Specifically, the law provided as follows:

> [W]henever a security deposit is held by a landlord or his agent on behalf of a tenant, such security deposit shall be deposited in an escrow account established only for that purpose.... The security deposit *shall be held in trust for the tenant* by the landlord or his agent....

O.C.G.A. § 44–7–31 (emphasis added). Therefore, any security deposits that were received from tenants of the Augusta and Milledgeville properties and placed in accounts seized by the Trustee have been held in trust for the benefit of these tenants. Any property held in trust for the benefit of a third party does not become part of the estate in bankruptcy. *United States v. Whit-*

---

10. The Court will also withhold a ruling on the propriety and reasonableness of certain fees, costs, and interests to which Empire claims it is entitled. A determination will be made after further evidentiary hearings, if necessary. Of course, the parties are free to settle these issues on their own, if possible.

11. This statute states as follows:

When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

O.C.G.A. § 44–14–161.

*ing Pools, Inc.,* 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983); *T & B Scottdale Contractors, Inc. v. United States,* 866 F.2d 1372, 1376 (11th Cir.1989), *cert. denied,* 493 U.S. 846, 110 S.Ct. 139, 107 L.Ed.2d 98; *Wisconsin v. Reese (In re Kennedy & Cohen, Inc.),* 612 F.2d 963, 965 (5th Cir.1980), *cert. denied,* 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38. Accordingly, the Trustee cannot claim and control the funds from the security deposits as property of the estate.

Having decided that the security deposits do not become part of the estate, a determination must be made of the amounts currently in the Trustee's possession. Empire has asserted that the funds amount to $58,769.25, but the Trustee claims insufficient evidence has been submitted to prove this fact. The Court notes, however, that it is the Trustee who has presented evidence to establish at least a portion of the funds as the security deposits. Specifically, the Trustee presents as Exhibit D of his Brief a bank statement from Exchange Bank of Milledgeville in the name of "College Station Apartments Milledgeville Security Acct." The statement reflects a balance of $17,591.10 just before the Trustee seized the account. The Court finds this to be sufficient evidence to establish this amount as security deposits seized by the Trustee, and the Trustee has not proffered any evidence to dispute this fact.

As for the remaining $41,178.15 of security deposits supposedly held by the Trustee, Empire claims that $34,630.00 represents deposits from the Augusta property and $6,548.15 represents deposits from the Milledgeville property. Allegedly on October 8, 1991, Empire attempted to transfer these funds into the Milledgeville security deposit account. For reasons unknown to this Court, however, Exchange Bank erroneously deposited the money into the operating account. *See* Dozier Aff. at ¶ 17 (Dec. 10, 1992). Again, the Trustee argues that insufficient evidence exists to establish that these funds are security deposits, especially since

they were commingled with the operating accounts. As for the $34,630.00 of the Augusta security deposits, however, the Court finds evidence in the exhibits presented by the Trustee. Specifically, Exhibit C to the Trustee's Brief is a copy of a check dated October 8, 1991, in the amount of $34,630.00, and paid to the order of "College Station Security Deposit Acct." for the transfer of security deposits. This evidence supports Empire's assertion that the specified amount represents security deposits, and the Trustee has failed to present anything in contradiction. As for the remaining $6,548.15, the Court believes that additional evidence is necessary above the Dozier Affidavit to demonstrate that this amount represents security deposits erroneously deposited into the Milledgeville operating account.[12]

Therefore, the Court finds that the security deposits held by a landlord in trust for the tenant do not become property of the bankrupt estate. Evidence before the Court establishes that the Trustee seized security deposits in the amount of $52,221.10, but further evidence is necessary for a determination as to the remaining $6,548.25 claimed by Empire. To the extent that the Trustee is holding security deposits, he must release these funds to be available as future refunds for tenants and to reimburse Empire for having to provide past refunds. To the extent that Empire is entitled to any reimbursement, it should present additional evidence documenting its repayment of security deposits.

## CONCLUSION

In conclusion, the affidavits presented by the Trustee contain testimony based upon his personal knowledge of issues relevant to this proceeding. Any objectionable testimony presented by the Trustee has been disregarded by the Court in reaching a decision in this Order. Furthermore, Empire has a right to the rents seized by the Trustee to the extent Empire still has a claim against

---

**12.** The Court notes Dyer Affidavit, Exhibit B (April 2, 1993), which is a copy of a bank statement for the operating account of the Milledgeville property. This document reflects that an amount of $41,178.15 was deposited on October

9, 1991, evidence that an additional $6,548.15 accompanied the erroneous deposit of $34,630.00. Nevertheless, the Court would like to see additional evidence that this amount of money represents security deposits as Empire claims.

the Debtor. Additional evidence is necessary, however, to determine the exact amount of Empire's deficiency claim. Finally, the security deposits seized by the Trustee are not property of the Debtor's estate. Evidence presented shows that the Trustee currently possesses $52,221.10 in security deposits, but additional evidence is needed to support Empire's claim for the remaining $6,548.15. Accordingly, Empire's Motion to Strike the Trustee's affidavits is **DENIED,** Empire's Motion for Summary Judgment is **GRANTED IN PART,** and the Trustee's Motion for Summary Judgment is **DENIED.**

IT IS SO ORDERED.