In the Matter of RIDGEMONT
APARTMENT ASSOCIATES,
LTD., Debtor.

ATLANTA ENGLISH VILLAGE,
LTD., Plaintiff,

v.

RIDGEMONT APARTMENT ASSOCI-
ATES LTD., A New Jersey limited part-
nership, Harmon/Envicon Associates,
A New Jersey Joint Venture, Firemen's
Insurance Company of Newark, New
Jersey, A New York corporation, and
Southmark Management Corporation,
A Nevada corporation, Defendants.

Bankruptcy No. A88–02855–WHD.
Adv. No. 90–0024A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 6, 1991.

Stephen C. Greenberg, Francis X. Moore, Holt, Ney, Zatcoff & Wasserman, Atlanta, Ga., for defendant Ridgemont Apartment Associates, Ltd.

C. Richard McQueen, Daniel A. Angelo, F.C. Schenck, Greene, Buckley, Jones & McQueen, Atlanta, Ga., for plaintiff Atlanta English Village Ltd.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter is before the Court on the Motion for Partial Summary Judgment filed by Ridgemont Apartment Associates, Ltd. ("Debtor") on January 31, 1991. Plaintiff Atlanta English Village, Ltd. ("AEV") filed a brief in opposition to the motion on February 20, to which Debtor responded on March 5. Having considered these pleadings and the record in the case file, the Court will grant Debtor's motion in part and deny it in part. The following constitute the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

On December 17, 1984, Debtor purchased from AEV the Ridgemont Apartments located at 7275 Roswell Road, Atlanta, Georgia (the "Property"). As a part of the transaction, Debtor gave to AEV a Promissory Note for $9.8 million, a Security Deed creating a security interest in the Property, and an Assignment of Rents from the Property.[1] In March of 1988, Debtor failed to make a $69,416.67 interest payment under the terms of these documents, and AEV declared Debtor to be in default. Debtor then filed its Chapter 11 petition on April 1, 1988.

On April 21, 1988, Debtor filed a Motion for Authorization to Use Cash Collateral, and the Court responded with a series of orders imposing conditions on such authorization (the "Cash Collateral Orders"), including an Agreed Interim Order dated May 31, 1988 directing Debtor to maintain post-petition security deposits in an escrow account and to deposit additional sums in separate accounts to pay insurance premiums and taxes; a July 8, 1988 order described below in some detail; and a December 14, 1988 order directing Debtor to secure security deposits collected by Debtor before April 1, 1988 by a bond, to place post-April 1 security deposits in escrow, and to deposit monthly payments into a tax reserve account.

Meanwhile, AEV filed a motion for relief from stay or in the alternative for adequate protection on April 27. In a June 22, 1988 order the Court preserved the automatic stay conditioned on Debtor's payment of $69,416.67 each month to AEV for adequate protection. The order further provided for automatic termination of the stay without further motion, notice, hearing or order if payments were not made as specified therein. Debtor filed a notice of appeal and sought a stay pending appeal, which was granted on June 29 subject to the posting of a $450,000 supersedeas bond. On July 8, 1988, the Court further conditioned the stay pending appeal on Debtor's monthly payment to AEV of either $35,000 or the excess cash collateral

---

1. Debtor acquired the Property subject to an April 6, 1984 security deed and assignment of rents given by AEV to First Federal Savings and Loan Association of Warner Robins ("First Federal") which secured a $6 million note to First Federal, and which were later assigned to the Federal Home Loan Mortgage Corporation ("FHLMC"). Because they later assigned their interests to AEV, the former rights, obligations and interests of FHLMC and First Federal under these documents shall be attributed to AEV for the purposes of this discussion.

generated by the debtor each month after paying necessary expenses, whichever is greater, and on Debtor's payment of certain deposits for taxes and insurance. Again, Debtor's noncompliance with that order or any other Cash Collateral Order would result in immediate termination of the automatic stay without motion, order or notice.

The supersedeas bond, executed by Debtor and Southmark Corporation ("Southmark") as co-principals and by Firemen's Insurance Company ("Firemen's") as surety, was filed on July 13, 1988. Under its terms the executors

> are held and firmly bound, jointly and severally, unto AEV ... in the principal sum of $450,000.00, and not in excess thereof ... for the payment upon the dismissal of the appeal by [Debtor] of [the June 22 Order], or immediately upon the affirmation of said Court Order, as reimbursement to AEV, ... but subject, however, to the U.S. Bankruptcy Court ... awarding to AEV ... actual damages which may be sustained....

Damages specifically covered by the bond include, *inter alia,* deficiencies in adequate protection payments, tax payments and tax reserve deposits, and insurance premium payments; damages caused by failure to maintain a separate escrow account for tenant security deposits; and "any and all other damages which may be sustained by AEV ... during the pendency of said Debtor's appeal...."

On August 10, 1988, the Court amended its June 22, 1988 order to include the following additional finding:

> The Court finds that the Debtor has no equity in the Property in that the value of the Property is less than the amount of the combined debt against the Property held by [AEV].

To reflect the amendment, Debtor filed an amended notice of appeal and the Court ordered a revised supersedeas bond. On October 21 Debtor filed the revised bond, the substance of which was the same as the original.

On September 21, October 11, and November 14, 1988, AEV filed motions "for Adequate Protection and for the Court's Direction Concerning Matters Relating to the Operation of the Debtor's Business" in which AEV alleged various violations of the Court's orders [2] and requested that the Court raise the amount of the supersedeas bond to $1 million. After a hearing on November 15 and 16 on the motions, the Court took no action with respect to the alleged violations, and on December 16, 1988 it denied AEV's request to increase the amount of the supersedeas bond, reasoning that the bond in addition to the monthly payments ordered on July 8, 1988 provided sufficient security.

The Court held a confirmation hearing on Debtor's proposed Chapter 11 plan on January 9, 1989. On February 15, 1989, the Court declined to confirm the plan and instead granted relief from the automatic stay to AEV. AEV conducted a foreclosure sale of the Property on April 4, 1989, purchased the Property at the sale with a bid of $7.8 million, and sold it to Signature Group for $7.2 million.

Both the District Court for the Northern District of Georgia and the Eleventh Circuit Court of Appeals affirmed the June 22 Order, and on January 5, 1990, AEV filed the present "Complaint for an Accounting and to Determine Damages Recoverable under Supersedeas Bond" against Debtor, Harmon/Envicon Associates (Debtor's general partner), Firemen's and Southmark. Count 1 of the Complaint asks for $3,749,172.84 as compensation for damages incurred during the stay pending appeal, including the depreciation of the Property's fair market value from $10,350,000 on June 22, 1988 [3] to $7,800,000 at the time of the foreclosure sale. According to Count 2,

---

2. Many of these allegations are substantially the same as those elaborated in Counts 2 through 6 of AEV's "Complaint for an Accounting and to Determine Damages Recoverable under Supersedeas Bond," *see infra.*

3. This figure is derived from the August 10 order in which the Court stated that the value of the Property was less than the debt owed to AEV. AEV calculated the debt to be $10,322,666 plus late charges and default interest totalling $167,825.

Debtor improperly used cash collateral to refund tenant security deposits and otherwise failed to comply with the Court's interim cash collateral orders of May 31 and December 14, 1988 (the "Cash Collateral Orders") pertaining to those deposits, and AEV requests the turnover of the deposits totalling $60,266. Count 3 alleges that Debtor improperly applied $69,681.86 of cash collateral toward pre-petition unsecured claims. Count 4 alleges that AEV is owed $25,673.62 for unpaid tax reserve deposits required by the Cash Collateral Orders. Count 5 alleges that AEV is owed a refund for an unearned insurance premium totalling $9,623.40 pursuant to the Cash Collateral Orders. Finally, Count 6 alleges that Debtor commingled $103,564.42 of cash collateral with "investor note receipts" totalling $25,886.30 in a savings account in contravention of the Cash Collateral Orders, moved $69,551.27 from this account into its general operating account, and moved $51,321.21 from the savings account to a second savings account, and it requests that the balance of both savings accounts ($34,952.14 and $52,879.64) be turned over to AEV.

In addition to the recovery of the alleged amounts, Counts 2 through 6 request that Debtor be ordered to "account to Plaintiff AEV" for the funds. AEV had filed a Motion for an Accounting by Debtor on March 25, 1989 which included many of the same allegations found in these Counts, to which Debtor had filed a response on May 3, 1989 purporting to satisfy the request. According to the Complaint, the Court stated in a May 10, 1989 in-chambers conference that the Motion would be heard in conjunction with the Complaint; the docket reflects no further resolution or adjudication of the Motion.

After Debtor filed the present Motion for Partial Summary Judgment, AEV moved to dismiss Firemen's as a defendant under the Complaint. The Court granted the request on April 25, 1991.

## DISCUSSION

 In accordance with Bankruptcy Rule 7056, which incorporates Federal Rule of Civil Procedure 56, this Court will grant a motion for summary judgment only when there is no material issue of fact to be tried and the movant is entitled to judgment as a matter of law, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *on remand,* 826 F.2d 33 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The movant bears the initial burden to establish that no such factual issue exists, *Id.* at 324, and the Court shall read any affidavits or pleadings in a light most favorable to the non-movant, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only when the movant's burden is met does the burden shift to the non-movant to demonstrate that there is an issue of fact to be determined at trial, *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991).

In support of its Motion for Partial Summary Judgment, Debtor asserts first that a cause of action under the bond is AEV's exclusive remedy, and that AEV's recovery must therefore be limited to $450,000 as provided by the bond. As an extension of this argument, Debtor asserts that damages for alleged violations of the Cash Collateral Orders are not recoverable under the bond and that Counts 2 through 6 of the Complaint are groundless as a result. Second, it argues that AEV is not entitled to recover damages for depreciation of the Property's fair market value in any event because the Complaint did not set forth a sufficient evidentiary foundation for recovery, because the bond did not provide for such recovery, and because the depreciation was not caused by the appeal. Finally, Debtor contends that it has already made a full accounting to the Court and that AEV's request for an accounting is moot.

In its reply to the Motion, AEV makes it clear that it is seeking damages resulting from Debtor's alleged violation of the Cash Collateral Orders and from the stay pending appeal of the June 22 Order, and that the Complaint was neither brought under nor limited to the terms of the supersedeas bond. It denies any evidentiary or causation problems with the Complaint that

would prevent it from surviving summary judgment. AEV also leaves for the Court's determination the question of whether Debtor's accounting was sufficient.

The Court shall address the issues in the order that they are presented by Debtor.

## A. IS AEV'S RECOVERY LIMITED TO THE AMOUNT OF THE SUPERSEDEAS BOND?

This question does not involve an analysis of the factual allegations of the Complaint. Instead, it requires the Court to examine its authority to grant the requested relief, which is a legal inquiry. Accordingly, summary judgment for one of the parties on this issue is appropriate. Because AEV clearly categorizes the damages it seeks as those caused by the stay pending appeal and those from violations of the Court's orders, the Court will bifurcate its discussion and address these categories separately.

### 1. *Damages caused by the stay pending appeal.*

■ In response to Debtor's matter-of-fact assertion that AEV's sole remedy under the Complaint is under the supersedeas bond, AEV points to the well established principle that the purpose of a supersedeas bond is "to preserve the status quo while securing the appellee from loss resulting from stay of execution" of the appealed judgment, *In re Alwan Bros. Co.*, 112 B.R. 294, 296 (Bankr.C.D.Ill.1990) (citing *Carter Baron Drilling v. Excel Energy Corp.*, 76 B.R. 172 (D.Colo.1987)). Where these losses are unliquidated and unknown at the time the supersedeas bond is approved, limiting recovery to the amount of the bond amount arguably may be incongruous with

this purpose because that limit may be lower than the actual amount of loss. Accordingly, AEV contends that an appellee's cause of action for damages arises not from the bond but from the Court's inherent equitable powers. The bond is a product of that power, according to AEV, and is but one procedural mechanism by which the appellee can seek protection from the adverse effects of an appeal.

This Court disagrees. While it may fashion an equitable remedy where no remedy exists at law, in this instance a statutory remedy is available. The supersedeas bond remedy has its origins in this country in the judiciary acts of 1789 and 1803, which required plaintiffs-in-error to answer all damages and costs for failure to make their pleas good, *see Omaha Hotel Co. v. Kountze*, 107 U.S. 378, 381–82, 2 S.Ct. 911, 914–15, 27 L.Ed. 609 (1883), and is currently grounded not in some vague concept of equity but in Federal Rule of Appellate Procedure 8 and Federal Rule of Civil Procedure 62. Bankruptcy Rule 7062 incorporates Rule 62 in adversary proceedings and specifically makes Rule 62(c) applicable to appeals from orders granting relief from stay.[4] Pursuant to Rule 62(c), the Court may, in its discretion, grant or restore an injunction during the pendency of an appeal "upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party," Fed.R. Civ.P. 62(c) (1991). When the Court exercised its discretion by providing the supersedeas bond, it provided the full amount of protection available under the Rule. Moreover, there is apparently no common law cause of action for damages incurred during the pendency of a stay pending appeal to supplement the procedural protection, as

---

4. Bankruptcy Rule 7062 provides that an order granting relief from the automatic stay under § 362 shall be "an additional exception" to Rule 62(a), thus entitling it to the same treatment as an order in an action for an injunction; Rule 62(a) provides that "[t]he provisions of subdivision (c) of this rule govern the suspending, modifying, restoring, or granting of an injunction during the pendency of an appeal," Fed.R. Civ.P. 62(a). Therefore, Rule 62(c) governs appellants' attempts to obtain stays pending appeal of motions for relief from stay.

Although it did not entirely lift the automatic stay, the June 22 Order "is of the type which is intended to be included as one of the exceptions of Rule 62(a) or Bankruptcy Rule 7062" because it modified and conditioned the stay upon the continuation of payments by Debtor, as this Court noted in its December 15, 1988 order (rejecting AEV's request for an increase in the amount of the Bond). Accordingly, it is governed by Rule 62(c).

is evidenced by the dearth of applicable case law. The Court is therefore forced to conclude that the supersedeas bond is the only mechanism through which AEV can seek relief.

■ Having reached this conclusion, it follows that AEV's recovery for damages caused by the stay pending appeal, found in Count 1 of the Complaint, is limited to $450,000 under the terms of the bond.[5] It is well established that a surety has the right to stand on the precise terms of the bond, and that its liability cannot be extended by construction or implication, 36 C.J.S. *Federal Courts* § 301(56) (1975); *Crane v. Buckley*, 203 U.S. 441, 27 S.Ct. 56, 51 L.Ed. 260 (1906); *Aetna Cas. & Surety Co. v. LaSalle Pump & Supply Co.*, 804 F.2d 315 (5th Cir.1986); *Aviation Credit Corp. v. Conner AirLines, Inc.*, 307 F.2d 685 (11th Cir.1962). While no cases have addressed the limits of recovery from an appellant on a supersedeas bond,[6] the Court believes that the same principle should apply. The appellee has the option to petition for an increase in the amount of the bond, as AEV did in this case, albeit unsuccessfully, and the fact that AEV still feels underprotected does not justify the abandonment of this procedure.

2. *Damages caused by violations of the Court's orders.*

If the purpose of a supersedeas bond is to protect the appellant from loss resulting from stay of execution of the appealed judgment, as established above, Debtor contends that Counts 2 through 6 of the Complaint, which allege various violations of the Court's orders including the Cash Collateral Orders, do not state a claim which is recoverable from the bond or outside of the bond because relief from the automatic stay was the sole remedy available for violation of the Cash Collateral

Orders under the Court's July 8, 1988 order. Debtor also states that AEV already brought these allegations before the Court in its September 21, October 11, and November 14, 1988 adequate protection motions, that Debtor successfully defended against them, and that the Court's failure to lift the stay constitutes a *res judicata* determination that no violations occurred, thereby preventing any recovery under the Complaint.

The Court addressed AEV's adequate protection motions in hearings held on November 15 and 16, 1988; while the record reflects no formal findings of fact or conclusions of law with respect to the motions, the December 16, 1988 order indicates that all issues raised in the motions other than AEV's request to increase the amount of the supersedeas bond were dealt with in the hearings. If the Court did address the same issues in those hearings that are now raised in the Complaint and rendered a final determination finding AEV's allegations to be meritless, the doctrine of collateral estoppel prevents AEV from raising the allegations again in this Complaint. The Court will not make that determination until it has had an opportunity to review a transcript of those hearings, however. Accordingly, resolution of this issue must be deferred until a later date.

B. MAY AEV RECOVER DAMAGES FOR DEPRECIATION OF THE PROPERTY'S FAIR MARKET VALUE?

■ On its face, the broad language of the supersedeas bond, which provides that Debtor is bound to reimburse AEV to the extent that the Court assesses liability for "any and all other damages which may be sustained by AEV ... during the pendency of said Debtor's appeal," can be construed

5. The bond states unequivocally that its executors are bound "in the principal sum of $450,-000.00, and not in excess thereof" to reimburse AEV, and the parties do not dispute the point.

6. In *Weiner v. 222 E. Chestnut Street Corp.*, 303 F.2d 630 (7th Cir.), *cert. denied*, 371 U.S. 935, 83 S.Ct. 308, 9 L.Ed.2d 271 (1962), the Seventh Circuit affirmed the District Court's award of

$60,000 (the amount of the supersedeas bond) plus interest for damages suffered by reason of delay arising from supersedeas, even though the District Court calculated the actual damage at $106,383.68. Neither the District Court nor the Circuit Court addressed the issue of whether the appellee could recover more than the amount of the bond plus interest, however.

to cover damages resulting from the depreciation of the Property's fair market value. However, this Court is reluctant to assess such depreciation damages, not because of Debtor's evidentiary or causation concerns, but because the recovery of such damages lacks a legal foundation. Damages for delay recoverable from a supersedeas bond include "damages arising from the delay occasioned by the proceedings in error or appeal, which are *properly legal damage* to the party delayed," *Ripka v. Philco Corp.*, 65 F.Supp. 21, 39 (S.D.N.Y.1945), *aff'd*, 154 F.2d 501 (2d Cir.1946) (citing *American Trust Co. v. Speers Sand & Clay Works*, 60 F.2d 994, 997 (4th Cir. 1932)) (emphasis added). The United States Supreme Court provided an early description of damages recoverable under an appeal bond, including

> (1) the depreciation of the property in market value pending the appeal; or (2) its deterioration by waste, or want of repair, or the accumulation of taxes or other burdens; or (3) the use and detention of the property pending the appeal, —that is, the rents and profits; or (4) the nonpayment of the costs of the appeal . . .

*Omaha Hotel Co. v. Kountze*, 107 U.S. at 392, 2 S.Ct. at 923, but in the next breath it expressed great doubt that depreciation in market value could ever be laid as a cause of legal damages on such a bond, *Id.* More recently, federal jurists have confirmed that market value depreciation is not recoverable at law, *United States v. Mansion House Center Redevelopment Co.*, 682 F.Supp. 446, 450 (E.D.Mo.1988); *Ripka*, 65 F.Supp. at 39. This Court agrees, and therefore will not award damages to AEV under the Complaint based on depreciation of the fair market value of the Property.

## C. MAY AEV REQUEST AN ACCOUNTING?

■ Finally, Debtor's argument that AEV's request for an accounting is moot because it already provided an accounting is meritless and can be dispensed with summarily. Debtor's May 3, 1989 response to AEV's Motion for an Accounting did not constitute a proper accounting which obviates the need for the present request; instead, it was simply a responsive pleading. The Court took up the matter in an in-chambers conference on May 10, 1989 and declared that the Motion for an Accounting would be heard in conjunction with the Complaint. Accordingly, AEV's request for an accounting in the Complaint is proper. However, to the extent that this request corresponds with allegations in Counts 2 through 6 involving the Cash Collateral Orders, the Court must defer its determination of whether the request is allowable until it determines whether a final judgment denying those allegations was made in the November 15 and 16, 1988 hearings.

## CONCLUSIONS OF LAW

Pursuant to the above discussion, the Court makes the following conclusions of law:

1. AEV may not recover damages for depreciation of the Property's fair market value under Count 1 of the Complaint;

2. Any other recovery for damages caused by the stay pending appeal under Count 1 of the Complaint is limited to $450,000 as set out in the Bond.

3. Any determination of the allowable extent of recovery under Counts 2 through 6 of the Complaint, either under the supersedeas bond or outside the bond, shall be deferred until the Court makes a further examination of the November 15 and 16, 1988 hearings.

In accordance with these conclusions, it is therefore ORDERED that Debtor's Motion for Partial Summary Judgment is GRANTED in part, and a ruling on the remainder of the Motion shall be deferred.

IT IS SO ORDERED.