**In the Matter of Michael George MAY, Debra Ann Pace May, Debtors.**

**Bankruptcy No. 93–41430.**

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

May 3, 1994.

Bradley L. Cooper, Alston & Bird, Atlanta, GA, for plaintiff/movant.

C. James McCallar, Jr. and Mark Bulovic, Savannah, GA, for defendant/respondent.

### MEMORANDUM AND ORDER ON MOTION FOR SEQUESTRATION OF RENTS AND REQUEST FOR ADEQUATE PROTECTION

LAMAR W. DAVIS, Jr., Chief Judge.

This matter came before the Court on the Motion of California Federal Bank, FSB for Sequestration of Rents and Request for Adequate Protection. On January 12, 1994, a hearing was held on the Motion. Based upon the evidence presented at the hearing, the parties' briefs, and the applicable authorities, I make the following Findings of Fact and Conclusions of Law.

#### FINDINGS OF FACT

On August 24, 1993, Debtors in the above-captioned case filed a petition under Chapter 11 of the Bankruptcy Code. Debtors remain in possession of the bankruptcy estate as debtors-in-possession under 11 U.S.C. Sections 1107 and 1108.

California Federal Bank, FSB ("California Federal") holds a balloon note ("Note"), dated October 16, 1991, which Debtors executed in its favor in the original principal amount of $600,000.00. The Note is secured by a Security Deed, dated October 16, 1991, that was duly recorded with the Clerk of Superior Court for Chatham County on October 17, 1991. The Deed grants California Federal a first priority security interest in 18 duplex units, which are located at 1401 King George

Boulevard, Chatham County, Georgia, and known as Hunters Green Townhomes ("Hunters Green"). Debtors also executed an instrument entitled "Multi–Family Rider—Assignment of Rents" ("Assignment"), which assigns the rents derived from Hunters Green to California Federal under the following terms:

> F. ASSIGNMENT OF RENTS. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agent to collect the rents and revenues and hereby directs each tenant of the Property to pay rents to Lender or Lender's agent. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the security agreement, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.
>
> If Lender gives notice of breach to Borrower;
>
> (i) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sum secured by the security instrument;
> (ii) lender shall be entitled to collect and receive all of the rents of the Property; and
> (iii) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

At some point in the early part of 1993, Debtors defaulted under the Note and Security Deed when they ceased making payments to California Federal. On May 17, 1993, California Federal sent, by certified letter, notice to the Debtors that their failure to make timely payments under the Note placed them in default under the terms of the Security Deed. On August 5, 1993, California Federal sent a second certified letter to the Debtors notifying them that the amount owing under the Note was being accelerated and that California Federal intended to assess fees pursuant to O.C.G.A. § 13–1–11.

As previously set forth, Debtors filed their bankruptcy petition in this Court on August 24, 1993.

Cross examination of Mrs. May revealed that, since filing their Chapter 11 petition, Debtors have been using a portion of the rents derived from Hunters Green to pay for their personal expenses. These personal expenses included tithing at Debtors' church, as well as servicing a second mortgage encumbering Debtors' personal residence.

California Federal brought this Motion seeking possession of the rents, or alternatively, a classification of the Hunters Green rents as "cash collateral" under 11 U.S.C. § 363. In support of the motion, California Federal asserts that the Assignment is unconditional and absolute, and as a result, it became entitled to sole possession of the rents from the date on which it notified Debtors of their default. Thus, according to California Federal, the Assignment divested Debtors, and therefore the Chapter 11 estate, of any interest in the rents.

Debtors counter the Motion with the argument that the Assignment is not absolute because it expressly requires California Federal to take some action before it is entitled to the rents. Thus, because California Federal failed to demand possession of the rents, Debtors argue that California Federal's interest in the rents remains inchoate and subordinate to that of Debtors'. Debtors apparently do not contest the classification of the rents as "cash collateral," but they do contend that using the rents to service the second mortgage on their personal residence is appropriate because the funds derived from the mortgage were used to purchase the Hunters Green property.

### CONCLUSIONS OF LAW

**1. Nature of the Hunters Green Rents**

Rents derived from property of the estate generally become property of the estate, *see* 11 U.S.C. § 541(a)(6), and a debtor-in-possession is ordinarily empowered to use such rents in the operation of the Chapter 11 estate. *See* 11 U.S.C. § 363(b)(1). If the rents are considered "cash collateral" under

section 363(a) of the Code, however, a debtor-in-possession's right to use such rents is sharply curtailed. *See* 11 U.S.C. §§ 363(c)(2), 363(e). Section 363(a) defines "cash collateral" as follows:

In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a). Thus, rents are "cash collateral" only when they are derived from property which is subject to the type of security interest provided for in section 552(b) of the Code.

Section 552(b) provides:

Except as provided in section 363, 506(c), 522, 544, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to ... rents ... of such property, then such security interest extends to such ... rents ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law ...

11 U.S.C. § 552(b). This provision states an exception to the general rule, set forth in section 552(a) of the Code, that property acquired by the estate after the filing of the bankruptcy petition is not subject to a security interest which arose by agreement before the commencement of the bankruptcy case. See 11 U.S.C. § 552(a). Thus, for section 552(b) to apply to rents derived from property of the estate, the following conditions must be present:

1) The debtor and creditor have entered into a security agreement prior to the commencement of the bankruptcy;

2) The security interest created under the agreement extends to property acquired by the debtor prior to the commencement of the bankruptcy case and to the rents derived from such property; and

3) If these two conditions are present, then the security interest extends to post-petition rents derived from the property to the extent that such an interest is contemplated by the relevant security agreement and to the extent permitted under applicable state law.

*See generally In re Vienna Park Properties,* 976 F.2d 106, 111–12 (2d Cir.1992) (Virginia law).

There is no question that the first two conditions set forth above are present in the instant case. The Security Deed and Assignment covering Hunters Green was executed prior to the commencement of Debtors' Chapter 11 case, and these instruments clearly cover both the underlying property and any rents derived therefrom. As to the third condition, the Assignment clearly grants California Federal the fullest interest in the rents that is available under state law. Thus, the only question under section 552(b) is the extent to which the lender's interest in the rents is affected by "applicable nonbankruptcy law", which in this case is the law of Georgia. *See e.g., Butner v. United States,* 440 U.S. 48, 54–57, 99 S.Ct. 914, 917–19, 59 L.Ed.2d 136 (1979); *Matter of Charles D. Stapp of Nevada, Inc.,* 641 F.2d 737, 738 (9th Cir.1981); *In re Leroy Moore,* Ch. 11, No. 488–00105, slip op. at 5 (Bankr.S.D.Ga., October 14, 1988) (J. Dalis).

Under Georgia law, "notice to third parties of the rights conveyed pursuant to a Security Deed or separate assignment is accomplished by filing and recording these instruments in the appropriate real property records." *In re Polo Club Apartments Assoc. L.P.,* 150 B.R. 840, 846 (Bankr.N.D.Ga.1993). *See also Cummings v. Johnson,* 218 Ga. 559, 560, 129 S.E.2d 762 (1963) ("A duly filed and recorded deed to secure debt is notice of all the rights which the grantee has thereunder."); *Padgett v. Butler,* 84 Ga.App. 297, 300, 66 S.E.2d 194 (1951); ("It was alleged that the assignment [of rents] was of record, thereby giving constructive knowledge of the plaintiff's right

to the rents."); O.C.G.A. § 11–9–104(h) (specifically excluding assignment of rents from the coverage of Georgia version of the Uniform Commercial Code).[1] As set out above, California Federal properly recorded the Security Deed and Assignment on October 17, 1991. Thus, California Federal has, under Georgia law, a valid, perfected interest in the Hunters Green rents.

The way in which section 552(b) and state law interact, however, has created a substantial amount of disagreement among the courts which have dealt with the issue. This is due to the fact that, in most states, a security-deed grantee (or mortgagee) with a properly recorded assignment of rents does not gain a present right to those rents until the occurrence of some further event, which event can range from the grantor's default to the grantee gaining possession of the property.[2] Thus, many courts have divided over whether a security-deed grantee (or mortgagee) should be permitted to take the requisite affirmative action post-petition to give the grantee a present interest in the rents.[3]

A recent line of cases has emerged that, to a large degree, resolves this controversy by holding that a properly recorded rent assignment, without the occurrence of any further event, is sufficient under section 552(b). These cases draw a distinction between "perfection" and "enforcement" of an interest under an assignment of rents:

> Assignment of rents may be perfected in the sense that the assignee may establish earlier (and therefore superior) lien rights against competing interests, such as those of subsequent lien creditors, by recording the assignment in the real property records. But something more than perfection in the U.C.C. sense is required for the assignee to take the rents. Although the enforcement steps required vary, most states require that the holder of a valid, recorded assignment of rents affirmatively "enforce" the assignment before it can collect the rents, or obtain priority in prospective rents, over late-coming creditors or a bankruptcy trustee.

*In re Dorsey*, 155 B.R. 263, 268 (Bankr.D.Me. 1993) (citations omitted).[4] Thus, "perfection" relates to the process by which a creditor's

---

**1.** See also In re Vienna Park Properties, 976 F.2d 106, 112–113 (2d Cir.1992) (Virginia law); *In re Dorsey*, 155 B.R. 263, 268 (Bankr.D.Me.1993) (Maine law); *In re SLC Ltd. V*, 152 B.R. 755, 760 (Bankr.D.Utah 1993) (Utah law); *In re Park at Dash Point L.P.*, 121 B.R. 850, 855 (Bankr. W.D.Wash.1990), aff'd, 985 F.2d 1008 (9th Cir. 1993) (Washington law).

**2.** Compare Matter of Charles D. Stapp of Nevada, Inc., 641 F.2d 737, 740 (9th Cir.1981) (under Nevada law, absolute assignment meant that lender entitled to possession of rents upon default); *In re Ventura–Louise Properties*, 490 F.2d 1141 (9th Cir.1974) (same result under California law); *Federal Deposit Ins. Corp. v. Int'l Property Management, Inc.*, 929 F.2d 1033, 1037–38 (5th Cir.1991) (same result under Texas law) with *In re Vienna Park Properties*, 976 F.2d 106, 114 (2d Cir.1992) (under Virginia law, lender must take possession, directly or through receiver, of property before entitled to rents under assignment of rents clause); *In re Polo Club Apartments Assoc., L.P.*, 150 B.R. 840, 851 (Bankr.N.D.Ga.1993) (same result under Georgia law).

**3.** Compare In re Casbeer, 793 F.2d 1436 (5th Cir.1986); *Matter of Village Properties, Ltd.*, 723 F.2d 441 (5th Cir.1984), cert. denied, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984); *Virginia Beach Federal Savings & Loan Ass'n v. Wood*, 97 B.R. 71 (N.D.Okla.1988), aff'd, 901

F.2d 849 (10th Cir.1990); *In re Johnson*, 62 B.R. 24 (Bankr.9th Cir. BAP 1986) (all allowing creditor to take post-petition action to gain present right to rents) with *In re Harbour Town Assoc., Ltd.*, 99 B.R. 823 (Bankr.M.D.Tenn.1989); *In re Wynnewood House Assoc.*, 121 B.R. 716 (Bankr. E.D.Pa.1990); *In re Vienna Park Properties*, 120 B.R. 332 (Bankr.S.D.N.Y.1990), rev'd, 976 F.2d 106 (2nd Cir.1992); *In re 1726 Washington, D.C. Partners*, 120 B.R. 1 (Bankr.D.D.C.1990); *In re Westport–Sandpiper Assoc., Ltd.*, 116 B.R. 355 (Bankr.D.Conn.1990); *In re Multi–Group III, Ltd. Partnership*, 99 B.R. 5 (Bankr.D.Ariz.1989); *In re Kearney Hotel Partners*, 92 B.R. 95 (Bankr. S.D.N.Y.1988) (all prohibiting a creditor from taking such action). See generally In re Polo Club Apartments Assoc., L.P., 150 B.R. 840, 852 (Bankr.N.D.Ga.1993) (Cotton, B.J.) (setting forth the divergent approaches to this issue).

**4.** See also In re Vienna Park Properties, 976 F.2d 106, 112–113 (2d Cir.1992) (Virginia law); *In re SLC Ltd. V*, 152 B.R. 755, 760 (Bankr.D.Utah 1993) (Utah law); *Midlantic Nat. Bank v. Sourlis*, 141 B.R. 826, 832 (D.N.J.1992); *In re KNM Roswell Ltd. P'tnership*, 126 B.R. 548, 554 (Bankr.N.D.Ill.1991); *In re Rancourt*, 123 B.R. 143, 147–48 (Bankr.D.N.H.1991); *In re Park at Dash Point L.P.*, 121 B.R. 850, 855 (Bankr. W.D.Wash.1990), aff'd, 985 F.2d 1008 (9th Cir. 1993) (Washington law); *In re Foxhill Place Assoc.*, 119 B.R. 708, 711 (Bankr.W.D.Mo.1990).

interest under an assignment of rents attains a status which cannot be avoided by an intervening third party, while "enforcement" describes the procedure that a creditor must follow to realize or possess the collateralized rents. *SLC Ltd. V,* 152 B.R. at 762. For purposes of determining whether rents are "cash collateral", these courts have concluded that a creditor need only have "perfected" its interest under the assignment of rents to satisfy section 552(b), which will have been accomplished when the creditor properly recorded the assignment. *See In re Vienna Park Properties,* 976 F.2d at 112–13; *In re Park at Dash Point L.P.,* 121 B.R. at 859–61.

Although the distinction between "perfection" and "enforcement" in this context has not heretofore been explicitly recognized by the bankruptcy courts in this State,[5] I conclude that it is the appropriate approach in applying Georgia law to section 552(b). Accordingly, California Federal's interest under the Assignment was "perfected", for purposes of section 552(b), when it was duly recorded along with the Security Deed in the Chatham County real property records. At the very least, then, the rents derived from Hunters Green were "cash collateral" under section 363(a) from the date Debtors filed their Chapter 11 petition. *See In re Vienna Park Properties,* 976 F.2d at 113.

■ The conclusion that the Hunters Green rents are "cash collateral" assumes that the Chapter 11 estate has an interest in the Hunters Green rents. *See* 11 U.S.C. § 363(a). Having concluded that the rents are "at least" cash collateral because California Federal had perfected its interest in them pre-petition, I now turn to the argument that California Federal, by its pre-petition acts, enforced that interest in such a way that the Chapter 11 estate was divested of any interest in the rents. If, as California Federal suggests, the Debtors were divested of any property interest in the rents by the lender's acts under the Assignment, then the rents would not be "cash collateral" because

11 U.S.C. Section 363(a) requires that for cash collateral to exist "the estate, and an entity other than the estate [must] have an interest." If fully divested, the Hunters Green rents would belong to California Federal as the assignee under the Assignment. The question remaining, therefore, is whether the Assignment was effective in divesting Debtors of any interest in the Hunters Green rents.

Resolution of this issue depends, at least initially, on whether California Federal took sufficient steps to "enforce" its interest in the rents under Georgia law.[6] As set forth above, enforcement is the process of transforming an inchoate interest under an assignment of rents into a choate, present interest, and it involves taking the steps required under state law to realize upon or possess the rents.[7] California Federal asserts that, because it took all steps required under the Assignment, it has properly enforced its interest in the Hunters Green rents to the exclusion of the estate. Thus, it is appropriate to begin by examining the language of the Assignment itself.

The Assignment purports to "unconditionally assign and transfer" to California Federal all of the rents derived from Hunters Green, with Debtors being entitled to collect the rents as trustee for the dual benefit of California Federal and Debtors until California Federal gives notice of breach to Debtors. The Assignment further provides that it "constitutes an absolute assignment" and that it is not "an assignment for additional security only." Under the express terms of the Assignment, therefore, only two conditions must be satisfied before California Federal is entitled to receive possession of the rents: (1) Debtors must breach a covenant or agreement in the Security Deed; and (2) California Federal must give notice of the breach to the Debtors. Both of these conditions were satisfied when Debtors failed to make payments on the debt and California Federal twice notified Debtors by certified

---

5. *Cf., Matter of Keller,* 150 B.R. 835, 839 (Bankr. N.D.Ga.1993).

6. Because the underlying property in this case is located in Georgia, this issue is governed by the

law of the State of Georgia. *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

7. *See discussion, supra* pp. 466–67.

mail that Debtors' failure to make timely payments under the Note constituted a default under the terms and conditions of the Security Deed.

Thus, under the express terms of the Assignment, California Federal gained a present right to demand possession of the Hunters Green rents on the date that it notified Debtors of their default. There is, however, a question of whether default and notice of default are sufficient acts of "enforcement" under Georgia law to give California Federal a present choate interest in the rents. This question is a matter of some controversy among the bankruptcy courts in Georgia, and the controversy is due in large part to the fact that there is scant Georgia law addressing the issue.

Two of the earliest Georgia cases dealing with the issue of whether a security-deed grantee is entitled to the rents derived from conveyed property are the Georgia Supreme Court's decisions in *Polhill v. Brown*, 84 Ga. 338, 10 S.E. 921 (1890), and *Stevens v. Worrill*, 137 Ga. 255, 73 S.E. 366 (1911). In both cases, the Court concluded that, even after a grantor has defaulted, the grantor nevertheless retains the right to collect the rents or profits derived from the property as long as he remains in possession. *Brown*, 84 Ga. 338, 10 S.E. 921; *Worrill*, 137 Ga. at 257, 73 S.E. 366. "While ... the holder of a security deed had a right to the possession of the land and might have recovered the same in an action of ejectment, he had no right to recover mesne profits from the owner of the land, except pending the action and to apply the same in payment of the debt due him". *Worrill*, 137 Ga. at 257, 73 S.E. 366 (*quoting Polhill v. Brown*, 84 Ga. 338, 10 S.E. 921). In both cases, however, the security deeds under consideration contained no assignment of rents clause or similar provision.

A case in which the Court did deal with entitlement to rents under an assignment of rents provision is *Penn Mutual Life Ins. Co. v. Larsen*, 178 Ga. 255, 173 S.E. 125 (1934). The assignment at issue in that case provided in part that the grantee under the deed "may enter upon said premises and collect the rents and profits thereof ..." *Id.* at 256, 173 S.E. 125. Thus, by its very terms, the assignment required that the lender take possession of the property to collect the rents. Not surprisingly, the Court concluded that the grantee under the deed, who had not taken possession of the property, could not disturb the grantor or his successors in his right to receive the rents from the property. *Id.*

The most recent Georgia case dealing with a lender's entitlement to rents under an assignment of rents clause is the Georgia Court of Appeals' decision in *Padgett v. Butler*, 84 Ga.App. 297, 66 S.E.2d 194 (1951). The assignment clause in that case provided in part that "borrower hereby (in the event of any default hereunder) assigns to the lender all rents, issues, and profits from said property." *Id.* at 299, 66 S.E.2d 194. Thus, the assignment was conditioned only upon the grantee's default under the promissory note and security deed. Accordingly, the Court concluded that "[t]he allegation of the written assignment by the owner of the property of the rents therefrom in the event of a default under the terms of the security deed, together with the allegation that the debt secured remained unpaid at all times therein referred to, was sufficient to show a default and to establish the [lender's] right to the rents." *Id.* at 299–300, 66 S.E.2d 194. In reaching the conclusion that, under the terms of the assignment, the lender was entitled to the rents upon default and without taking any further action, the Court specifically distinguished *Polhill v. Brown, supra,* and *Stevens v. Worrill, supra,* as not involving security deeds with assignment of rents provisions. *Id.* at 300, 66 S.E.2d 194.

This is the extent of Georgia law on this issue.[8] Undeniably, the common thread, as one bankruptcy court has observed,[9] running through the Georgia Supreme Court's decisions in this area is the concept of possession;

---

8. *See also Few v. Pou*, 32 Ga.App. 620, 124 S.E. 372 (1924) (Court, in absence of an assignment of rents, focused upon possession to determine right to rents among competing claimants).

9. *See In re Polo Club Apartments Assoc., L.P.,* 150 B.R. 840, 846–50 (Bankr.N.D.Ga.1993) (Cotton, B.J.)

that a grantee under a security deed does not, prior to gaining possession of the property, have a present right to the rents derived from the property. It is also true, however, that in two of the Court's decisions, no rent assignment provision was involved, *see Polhill v. Brown, supra; Stevens v. Worrill, supra,* while in the other, the rent assignment expressly required the grantee to take possession of the property before becoming entitled to the rents. *See Penn Mutual Life Ins. Co. v. Larsen, supra.* Moreover, the Georgia Court of Appeals very clearly held in *Padgett,* the most recent pronouncement on the issue from a Georgia court, that a grantee, who alleged that a grantor under a security deed was in default and that the rent assignment in that security deed was conditioned only upon the grantor's default, established its right to the rents derived from the conveyed property without the need of further action by the grantee.

Among the bankruptcy courts that have considered this issue, two opposing lines of authority have developed. One line holds that, under the Georgia Court of Appeals' decision in *Padgett v. Butler,* a grantee under an unconditional assignment of rents provision is not required to take any action after default to entitle it to the rents thereunder. *See In re Jones,* 77 Br. 981, 984 (Bankr. M.D.Ga.1987); *In re Leroy Moore,* Ch. 11 No. 488–00105, slip op. at 7 (Bankr.S.D.Ga. October 14, 1988) (Dalis, B.J.) These cases adopt a literal reading of the contract to determine what act of enforcement shall be required:

"A review of *Jones* [*supra* ] and [the relevant] Georgia decisions establishes that the language of the deed to secure debt clause assigning rents determines whether the assignment grants to creditor a present right to the rents or a right conditioned upon perfection [ie. enforcement] through

some action such as default, default and notice of acceleration, or taking possession of the property by a secured party."

*In re Leroy Moore, supra,* slip op. at 7 (*citing In re Jones,* 77 Br. 981, 984 (Bankr. M.D.Ga.1987)).

The second line of authority in the Northern District of Georgia holds that, regardless of the language contained in an assignment of rents, a security-deed grantee who has not taken some dispossessory action (ie. appointment of state receiver, ejection action or notice of interest in rents to all tenants) to enforce its interest, is not entitled to the rents derived from the property.[10] The seminal case within this line of authority is *In re Polo Club Apartments Assoc., L.P.,* 150 B.R. 840 (Bankr.N.D.Ga.1993) (Cotton, B.J.), wherein the Court concluded that, under the *Penn Mutual* line of cases,[11] possession of the subject property is the touchstone in Georgia when determining entitlement to rents:

[A] security deed grantee out of possession is not presently entitled to receive rents merely upon the occurrence or existence of a default. The grantor being in possession and receiving rents may not be disturbed in his right to the rents by the security deed grantee until he takes possession or takes other appropriate action to subject the land and rents to the debt.

*Id.* at 851. In reaching this conclusion, the court attempted to factually harmonize the Georgia Court of Appeals decision in *Padgett v. Butler,* as follows:

The court of appeals found that the defendant widow did not have possession of the property at or after the grantor's death. The opinion contains no indication that the defendant widow had any rights to the property or the rents. Accordingly, as between the grantor's widow with no right to possession and the security deed grant-

---

**10.** *See e.g., In re Polo Club Apartments Assoc., L.P.,* 150 B.R. 840 (Bankr.N.D.Ga.1993); *Matter of Keller,* 150 B.R. 835 (Bankr.N.D.Ga.1993); *In re Tollman–Hundley Dalton, L.P.,* 162 B.R. 26 (Bankr.N.D.Ga.1993) *aff'd, Financial Security Assurance, Inc. v. Tollman–Hundley Dalton, L.P.,* 165 B.R. 698 (N.D.Ga.1994); *Matter of Real Estate West Ventures, L.P. (Empire Financial Servic-*

*es, Inc. v. Ira D. Gingold, et al.),* 170 B.R. 736 (Bankr.N.D.Ga.1993); *In re Club Tower L.P.,* No. 91–71169 (Bankr.N.D.Ga. July 12, 1991); *In re Perimeter Park Investment Associates, Ltd.,* 1 B.R. 473 (Bkrtcy.N.D.Ga.1979).

**11.** *Polhill v. Brown, supra; Stevens v. Worrill, supra; Penn Mutual Life Ins. Co. v. Larsen, supra.*

ee holding a recorded security deed with rent assignment, the grantee was entitled to the rents based on her higher title and right to possession. Therefore, the findings of fact and holding in *Padgett, supra,* are consistent with the prior cases which have considered Georgia law.

*Id.* at 849.

I cannot agree with this portion of the *Polo Club* opinion because I do not read the Court of Appeals' decision in *Padgett* as dependent upon the fact that the widow of the grantor, rather than the grantor himself, was holding the rents. To the contrary, the Court made clear that the allegation of the existence of a rent assignment, which was conditioned only upon default, in conjunction with the allegation that the grantor was in default, was sufficient for the grantee to state a cause of action as to his right to the rents.[12] Moreover, in reaching this conclusion, the Court specifically distinguished two of the cases which make up the *Penn Mutual* line of cases as not involving rent assignment provisions.[13] I therefore conclude, as did the courts in *Moore* and *Jones,* that the better approach under Georgia law is to preserve the parties' freedom of contract in specifying the steps that a grantee must take to enforce its interest in the rents.[14]

■ In this case, California Federal's interest under the Assignment is, as set forth above, conditioned only upon California Federal giving Debtors notice of their default. California Federal satisfied this condition pre-petition when it twice notified Debtors that they were in default. Accordingly, California Federal's interest under the Assign-

ment became a choate interest from the date it served such notice upon Debtors. This conclusion does not lead, however, to the conclusion that the Chapter 11 estate was deprived of any interest in the rents from the date of notice, as California Federal contends. This is because, as the court in *Polo Club* correctly observed, a grantor under a security deed and assignment of rents retains a residual right in the rents:

> Common sense suggests that if an absolute conveyance by security deed does not convey an absolute estate as to title, an absolute conveyance by assignment of rents arising from the same property does not convey an absolute estate in the rents. In both situations, the grantor retains a right of possession and of redemption which comprise a part of the grantor's equitable estate....
>
> Even if a grantor in possession could convey an absolute right to rents, the assignment would not extinguish his equitable estate in the rents. Under an absolute assignment, a grantee only obtains a conditional right to rents as a type of security and must account to debtor-grantor for any surplus above the amount of his debt.

*Polo Club Apartments,* 150 B.R. at 850 (citations omitted). Thus, while an assignment may be described as being "absolute" and not for "additional security", it is clear that such an instrument is, by necessity, wholly dependent upon the underlying debt instrument and deed to secure debt.[15] If this were not the case, the assignment would be a permanent encumbrance upon the real estate because the lender would hold an assignment

**12.** *Padgett v. Butler,* 84 Ga.App. at 299–300, 66 S.E.2d 194.

**13.** *Id.*

**14.** The distinction between this holding and that in *Polo Club* is not merely academic. In a Chapter 7 liquidation the differing analyses will arguably yield vastly different results. Since the liquidating trustee has no Section 363 rights to the rents, my holding would preserve the rents to the lender, if perfected. Under *Polo Club,* however, Chapter 7 trustee, as successor to the debtor's rights, would arguably retain the rents, in contravention of the loan documents, and state law, unless the lender had taken possession pre-petition. *Polo Club* avoided this harsh result by

finding that Georgia courts would not follow a "strict interpretation" of Georgia rent assignment law. The conclusions reached herein are no dependent on such an assumption.

**15.** *See e.g., In re Oaks Partners, Ltd.,* 135 B.R. 440, 450 (Bankr.N.D.Ga.1991) ("It is important to recognize that absent bankruptcy, if a creditor ... enforced its assignment of rents and took possession of the rents without foreclosing, it would still need to apply those rents to the debt as it existed at the time the rents were received. The only way [the grantee] could collect the rents and not apply them to the debt would be to foreclose and become the owner of the property ...").

which would be absolute and unrelated to the disposition of either the underlying debt or the land itself. Regardless of the language used, an assignment of rents provision cannot divorce the rents from the land from which the rents are derived, and when the underlying obligation is extinguished, whether by payment or otherwise, there can be no question that the assignment will likewise terminate.[16]

In sum, I conclude that an assignment, which is characterized as "absolute", is not absolute in the sense that it totally divests a grantor of any and all interest in the rents. The grantor retains an equitable interest in the rents, and whether the interest is depicted as a "reversionary interest", a "right of redemption" or the like, it is an interest which becomes property of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1). As such, the interest is clearly subordinate to that of a grantee who holds an unpaid debt obligation and a choate interest in the rents under an assignment, but it is still sufficient to give the bankruptcy estate an interest in the rents and allow a debtor-in-possession to use such rents in the operation of its business, *see* 11 U.S.C. § 363(c)(1), subject to the restrictions placed upon the rents as "cash collateral." *See* 11 U.S.C. § 363(c)(2).[17]

**2. Use of Cash Collateral**

Thus, Debtors' estate has an interest in the Hunters Green rents despite the fact that California Federal holds a choate interest in them under the Assignment. Because the rents constitute "cash collateral" under section 363(a), however, Debtors use of the Hunters Green rents is subject to the restrictions set forth in section 363(c)(2), which provides:

> The trustee may not use, sell or lease cash collateral under [section 363(c)(1)] unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2). Here, California Federal has not consented to such use, and in fact seeks protection of its interest under the Assignment pursuant to section 363(e) of the Code. Section 363(e) provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e). In assessing what is required to provide California Federal with adequate protection of its interest in the rents, I am mindful of two things. The first is section 361 of the Bankruptcy Code, which defines adequate protection as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

---

**16.** *See Matter of Charles D. Stapp of Nevada, Inc.,* 641 F.2d 737, 740 (9th Cir.1981) ("Absolute" does not mean ... that the assignee is relieved of all obligation to account or that the right to the rents is independent of the underlying debt. Upon foreclosure, the creditor ... must account for any excess derived from the sale and rents collected between the date of default and the date of foreclosure sale over and above the amount of the obligation owed.")

**17.** *See also Polo Club Apartments,* 150 B.R. at 853 (concluding that once the grantee had made its interest in the rents choate, by a motion for sequestration before the bankruptcy court, "[t]he court would properly consider and balance state law rights and federal bankruptcy law principles such a prospects or reorganization, adequate protection, right to cured defaults, etc.")

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

The second consideration is the United States Supreme Court's admonishment in *Butner* that a "federal bankruptcy court should take whatever steps are necessary to ensure that a mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued." *Butner v. United States*, 440 U.S. 48, 56, 99 S.Ct. 914, 919, 59 L.Ed.2d 136 (1979).

With these considerations in mind, it is clear that, to the extent Debtors are permitted to use the rents for any purpose other than direct costs associated with the underlying real estate (debt service, taxes, utilities, maintenance, and the like) such a use "results in a decrease in the value" of California Federal's interest in the rents. There has been no suggestion that Debtors are willing or capable of making any cash payments or providing for a replacement lien to compensate California Federal for the decrease in value. Thus, the question becomes: What relief, given that California Federal has a perfected, choate lien against the rents under the Assignment, will insure that it receives the "indubitable equivalent" of its interest in the rents.

■ An equity cushion in property may provide a creditor with adequate protection of its interest,[18] and Debtors assert that the equity cushion present in the Hunters Green property provides California Federal with such protection. California Federal, however, disputes the existence of any equity in the property. This Court has yet to make such a determination, and until determination is made, I find that mere potential equity cushion is inadequate to protect California Federal's choate interest in the rents. The only way to adequately protect California Federal's interest in the rents, absent relief from stay, is to require Debtors to segregate all rents in a separate account and strictly limit the use of the rents to the costs and expenses which are directly related to the maintenance of the Hunters Green property. Any rents in excess of these expenses are to be held in a separate bank account and may not be used for any other purpose. Use of the rents for costs which are only tangentially related to the property or for any personal expenses, will result in a decrease in the value of California Federal's interest in the rents and would be grounds for relief from the automatic stay under section 362(d) of the Code.[19]

I therefore hold that Debtors may not use any of the rents derived from Hunters Green for personal expenses or to service obligations on the personal residence or on other investment property. As California Federal correctly points out, a default upon on any of these other obligations will not result in a default under any security interest related to Hunters Green. Although this restriction may place Debtors in a difficult position, use of the Hunters Green rents to service Debtors' home mortgage or other investment property does impermissible damage to California Federal's interest in the rents.

■ In fashioning this relief to protect California Federal's interest in the rents, the court is aware that California Federal is not receiving the identical treatment that it would receive under state law. Under state law, it would, as the holder of a perfected choate interest in the rents, be entitled to possession of the rents. As one court has noted, however, "[d]elay of the secured creditor's access to the collateral, by itself, does not justify relief from stay, so long as the creditor's interest in the collateral is protected." *In re Park at Dash Point, L.P.*, 121 B.R. at 858 (citing *United Sav. Ass'n v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)).

---

18. *See e.g., In re Fortune Smooth Ltd.*, 1993 WL 261478, at 5 (Bankr.S.D.N.Y. July 6, 1993); *In re Lane*, 108 B.R. 6, 8 (Bankr.D.Mass.1989).

19. *See e.g., Matter of Ridgemont Apartment Associates, Ltd.*, 127 B.R. 934, 936 (Bankr.N.D.Ga. 1991).

## *ORDER*

Pursuant to the foregoing Findings of Fact an Conclusions of Law, the parties are OR-DERED to file a stipulation as to which expenses may be paid out of accruing rents in accordance with this opinion and those which may not. Debtors are ORDERED to segregate all rents derived from the Hunters Green property and hold same until an order approving said stipulation is entered. If such an agreement cannot be reached, the Court will schedule a hearing on request of either party.